"This case is before the court on cross-motions for summary judgment, but the judgment sought by plaintiff is *977 partial only. A third-party, Parkway Terminal Company, was notified pursuant to Rule 41(a)(1) and its motion to quash the notice has been denied by order of May 13, 1977, 214 Ct. Cl. 735. Plaintiff was awarded a Lease/Build contract with the Postal Service. It was to purchase from defendant a tract of land then owned by Parkway Terminal Company, construct a postal facility on it, and lease the same back to defendant at an agreed rental. The location was in the Borough of Greentree, near Pittsburgh, Pennsylvania. The contract included no disputes clause and the claim is prosecuted on a breach theory. There are three alleged breaches, all of implied commitments. The first, which if sustained would subsume the others, is that well before the award date defendant knew of a record cloud on the title, namely what is hereinafter called the channel easement. This reflected a taking by the Department of Transportation, Commonwealth of Pennsylvania, made and recorded in 1950, to assure drainage for a state highway. Plaintiff was unaware of this easement and defendant, while notifying plaintiff of other title defects, failed to mention this. The easement, according to plaintiff, prevented necessary financing and thereby caused repeated postponements of the original agreed closing date, and the delays occasioned financial loss to plaintiff in the amount of $372,949. Plaintiff relies on the doctrine of Hardeman-Monier-Hutcherson v. United States, 198 Ct. Cl. 472, 458 F.2d 1364 (1972) and other cases, that in inviting bids defendant is obliged to disclose anything known to it, but likely to be unknown to bidders, that would materially delay performance or enhance its difficulty and cost.
"Defendant alleges various defenses. It relies on the title recording system of the state to impute prior knowledge of the easement to the plaintiff, but plaintiff says it was affirmatively misled. We can pass this issue by because of another defect in the claim, which defendant also relies on and which is decisive.
"The Lease/Build contract required plaintiff first to obtain title to the site by quitclaim deed of the defendant. It had to have good title to obtain necessary financing from private sources. Financial institutions would not lend in face of the title defect. Therefore, says plaintiff, the *978 defendant caused the delay by failing to clear the title of the channel easement as it should have done, and, therefore, it breached an implied contract not to obstruct the work. Defendant says it was able to clear the title almost immediately when the crucial nature of the defect was first called to its attention, so the cause of the delay must have been something else. Plaintiff has not shown what it was, and, therefore, has failed to establish that the defect was, in reality, the cause.
"Plaintiff was given an opportunity, at oral argument, to submit new affidavits clearing up this defect in its proof. They have been filed and considered, and fail to answer the real problem.
"A showing that the defendant’s alleged dereliction could have caused the delay or was capable of doing so is not enough. It must appear that the delay, or at least some significant part thereof, was proximately caused by defendant, i.e., would not have occurred if the delays for which defendant was responsible had been eliminated. Merritt-Chapman & Scott Corp. v. United States, 208 Ct. Cl. 639, 528 F.2d 1392 (1976). Since the defendant’s contract did not embody a disputes clause, the issue formulated itself as a breach claim, whereas the cited case involved a suspension of work clause, but the principles are the same. Even if, as here, the assessment of damages is reserved for the quantum phase of the case, the plaintiff as part of its proof of entitlement, must show it was damaged to some extent, by defendant’s derelictions, and it has failed to do so for the reason stated. One of plaintiffs post-argument affidavits makes the conclusory allegation that plaintiffs losses were the 'direct, sole, and proximate result’ of the existence of record of the channel easement, but the detailed history of the case reveals the contrary.
"Defendant advertised for bids on November 5, 1970, and opened the bids on January 10, 1971. On April 20, 1971, it advised plaintiff an award would be made to it and entered into an 'agreement to lease’ on the same date. Plaintiff was required to pay $373,700.41 for the land, and it was to receive $172,787 per annum for 20 years as rental. Closing was originally to be within 30 days, but the date was repeatedly extended.
*979 "On May 7, 1971, the Lawyers Title-Insurance Company called to plaintiffs attention the existence of record of the above-mentioned so-called 'channel easement.’ On May 13, 1971, plaintiff by letter invited the attention of defendant to the existence of 17 exceptions (sic, actually 20) to the title as noted by the Title Insurance Company, of which that was one, but made no request with respect thereto except for extension of time. The channel easement was exception No. 14.
"Plaintiff had financing commitments but the leading institutions refused to permit closing until the title was cleared.
"On March 23, 1972, plaintiffs attorney wrote (referring to a conversation of evidently recent date) to the Army Engineers, which had assumed construction responsibility for the project. He stated that areas taken for the channel easement were located under a substantial portion of the proposed building, that lenders were unwilling to close, and that the location (perhaps he meant the exact location) was not known to plaintiff until the preceding week, 'when Gateway Engineers, Inc. indicated same on the Plan.’ He thought the United States could easily obtain extinguishment of the right of way from the Commonwealth of Pennsylvania, since the Plan stated the involved areas were not in use since completion of an arch culvert. Defendant explains the easement was originally taken in 1950 to allow drainage from a state highway and that it had ceased to serve that purpose since installation of an arch culvert in 1965.
"Both plaintiff and defendant were thereafter in contact with the state. Defendant wrote the Pennsylvania Department of Transportation on March 28, 1972. On May 25, 1972, the Pennsylvania District Engineer executed a notice that except for the culvert, the channel easement had become unnecessary and it was, therefore, abandoned. This enabled the closing to take place, as it did, the following day, May 26, 1972.
"Defendant of course had long been aware of the channel easement and plaintiff, as has been said, became aware on May 7, 1971. The letter of March 23, 1972, indicates that until shortly before that date, plaintiff or its counsel had *980 not seen the easement plotted on the plan and therefore did not realize the extent to which it was a cloud on the title. There is nothing to show that defendant did not likewise lack this realization. It is clear that since building of the culvert in 1965, the easement had been of no value to the state. There is nothing to show that the state would not have abandoned the easement, except for the culvert, whenever asked, at any time after 1965.
"Plaintiff would like to have us believe, and hold, that the defendant should have extinguished the channel easement at the time of inviting bids, or before, and that its failure to do so (not having advised plaintiff of the defect before it bid) was a breach of implied obligations, and caused the refusal of the financing institutions to go to closing, the repeated postponements of the closing date, and the delay losses plaintiff suffered.
"It is obvious that the plaintiff at the outset, and throughout, did not ask defendant to remove title defects. It worked on them itself (several others besides the channel easement) and asked for time extensions when difficulty arose with them. It did not ask for defendant’s help on the channel easement, departing from its previous cours^ of dealing, until March 23, 1972, almost a year after the award date. The channel easement was a matter of appearance, not substance. It could have been removed on request at any time. All parties seem to have been late in tumbling to its significance as a stumbling block to early closing.
"It seems clear that responsibility for delay up to March 23, 1972, cannot be imputed to the channel easement itself, whose significance no one realized, and, therefore, it fails as a vehicle for charging defendant with causing that delay. As to the period after March 23, 1972, it appears that on or before April 25 plaintiffs counsel had learned that Pennsylvania would release the channel easement. He asked for a time extension to May 31. The extended time was almost all used, but there is nothing to show Pennsylvania would not have met an earlier deadline. Assuming, however, that it took two months to get a release out of the state bureaucracy, once it was asked for, plaintiff, or defendant at plaintiffs request, could have *981 easily accomplished it, so far as appears, within the delay caused by other things, well before March 23, 1972. Plaintiff, who knew of the channel easement as early as May 7, 1971, and could with diligence have had it extinguished within 60 days thereafter, either by its own request alone or one supported by defendant, cannot use the channel easement to blame defendant for the delay from March 23 to June 26,1972, which is the most it can be considered to have caused. Accordingly, plaintiffs breach claims fail so far as they relate to the channel easement.
"Plaintiff had two other alleged breach claims. One related to an alleged misdescription. The quitclaim deed gave the western property line of the site as 483.73 feet, while the Agreement to Lease gave it as 439.73 feet, but the latter was eventually corrected to agree with the former. This minor discrepancy cannot be rationally said to have caused all or any part of the delay of over a year in effecting a closing. The other relates to the failure of Parkway Terminal Company to complete Turnbull Drive until December 1971, that drive having to be crossed for access to the project site. Defendant says that the drive, even when incomplete, offered no impediment to plaintiffs crossing it, and in any event, plaintiff was not ready to close until long after the drive was completed. We conclude that both these matters lack standing as independent breaches that require consideration even if, as we hold, the channel easement claim fails. Plaintiff hardly attempts to argue otherwise.
"Accordingly, upon consideration of the motions for summary judgment, the briefs, affidavits, and documents submitted in support thereof, and the oral arguments of counsel, it is ordered, that plaintiffs motion for partial summary judgment is denied, defendant’s motion for summary judgment is granted, and the petition is dismissed.”