This case is stated in the petition to be one for review of a decision by the Armed Services Board of Contract Appeals (ASBCA) both under the Wunderlich Act, 41 U.S.C. §321, and under the Contract Disputes Act of 1978, 41 U.S.C. § 601 and ff (Supp. Ill 1979) (cda). Defendant’s Department of the Air Force awarded plaintiff a construction contract, F 35610-76-C-0100, on August 28,1975. Disputes arose and plaintiff filed claims for equitable adjustments on various theories, and for breaches, including government-caused delay. The contracting officer issued a decision February 13, 1979. The effective date of the cda was March 1 of that year. On March 14, 1979, the contractor appealed, and the absca assigned it number 23689. The board ruled that these claims were not pending before the contracting officer on March 1 and, therefore, the broadening of its jurisdiction effected in the cda was not applicable. Section 16 of Pub. L. No. 95-563. The contractor again presented virtually the identical claims to the contracting officer in December 1979. He refused to decide alleging he had already made his final decision. The contractor appealed from this refusal and the board numbered this appeal 24564. The board considers that this second appeal validly puts before it certain claims that the first one does not, i.e., those of which it did not have cognizance under the prior law, but did under the cda.
Defendant moved to dismiss No. 24564 on the ground that it was "merely duplicative” of No. 23689. By opinion dated June 3,1980, the board denied this motion, holding that the contractor had resorted to a permissible procedure to bring before the board breach and reformation claims not previously within its cognizance, but made so by the new law. *755 The board noted later that the two sets of claims were substantially identical so far as concerned the facts of the wrongs complained of. The lack of identity resided in the fact that the later claims were founded on a different legal theory.
The board, later in a decision of December 30, 1980, Johnson & Son Erectors Co., 81-1 BCA (cch) ¶ 14,880, reaffirmed on motion for reconsideration March 31, 1981, 81-1 bca ( cch) ¶ 15,082, allowed a government motion to strike from both appeals all references to contract breaches wherever a contract clause existed that would provide a means for an equitable adjustment if the contractor established entitlement to one, retaining only allegations of breach of procurement regulations and breach by government-caused delay, there being, as to the latter, no contract clause for "suspension of work.” These retentions were limited to Appeal No. 24564 only. The breach issues excluded from both appeals were defective and ambiguous specifications, withholding of superior knowledge, and impossibility of performance. The board construed contract clauses as providing for equitable adjustments if grievances of these characters were established factually, and it took the view that whatever was otherwise established as a contract breach was not a breach if it was remediable under the contract.
The immediate practical consequence of this view is to throw all those latter classes of claims into the earlier appeal, No. 23689, because the board had cognizance of them when first presented in that appeal, without the aid of the cdA. This in turn withdraws from plaintiff in proving these claims the benefit of the board’s new nationwide subpoena power under 41 U.S.C. § 610 and remits plaintiff to the more cumbersome and costly procedure that previously obtained, by which the United States District Court of the district where the witness resided had to issue the subpoena. This seems to be what this possibly over-hasty appeal to us is really about. Plaintiff has no clear perception that the measure of damages is different, but the accrual of interest may be; however, the contract provides for interest as generally contracts of its date did. Plaintiff is a small business and has been bankrupted by this contract, *756 so finding the most inexpensive manner of litigating is vital to its ability to maintain the suit.
Since the board can subpoena some witnesses in connection with the remaining breach claims under Appeal No. 24564, and since under § 610 it will be necessary to resort to a district court if a subpoenaed witness is recalcitrant, it is at this point anyone’s guess what added costs, if any, plaintiff will incur. We suppose defendant will produce without subpoena all witnesses under its control. In connection with the impossibility issue, there will be third parties having needed information.
At any rate, plaintiff-appellant appeals the grant of defendant’s motion to strike. In response to defendant’s obvious response that this is an interlocutory matter and the recourse to this court, whether by way of Tucker Act petition under former law, or appeal under the new law (apparently it is both), is obviously premature and unauthorized, plaintiff says the order of the board is final so far as it bars prosecution of breach claims before the board if they are in the categories stated. By this view, the finality of the order is not impaired by the fact that only procedure, not substance is shown to be directly affected. In view of the novelty of the issue and the fact it arises as incident to the transition to operations wholly covered by the new law, we are willing to assume that plaintiff is right. Defendant cites no case that is open and shut to the contrary.
On the legal substance of its contention, plaintiff-appellant says that the whole theory of constructive changes in contracts is a "legal fiction” invented to enable contract appeal boards to do justice in what are really breach cases. Now that in the CDA the Congress has broadened board jurisdiction so boards can do all that courts could do in government contract cases, the need for this fiction is past and therefore it must be considered swept away. What looks like a government breach and would be a breach but for a contract exculpatory clause, can be dealt with as a breach by the contractor and by the board. We are not entirely clear whether plaintiff would override exculpatory clauses entirely, or only when the use of them involves invention of a fiction that something has occurred that in fact has not occurred: a formal change order or formal suspension of *757 work, for example, where a suspension of work clause exists. In either event, the position ignores history and imputes to Congress intent to achieve a sweeping change of which it gave no notice.
By plaintiff-appellant’s view, Congress provided a new board remedy in disregard of contract clauses, and Appeal No. 24564 must be held to invoke a power the board now has to consider withholding of superior knowledge, impossibility, etc., as breach issues whether or not in pre-Dispute Act days they were remediable under contract clauses also found in the contract under review.
The various clauses that provide for contract equitable adjustments, and the disputes clause, were put there for purposes highly important to the government as well as to the contractor, among which the issue of board jurisdiction was minor. If a board could not remedy a breach, a court could. One major purpose is to keep the work going at all events, despite controversies that may arise. This holds good even to the point of giving important legal consequences to a legally erroneous contracting officer’s decision. Broad Avenue Laundry and Tailoring v. United States, ante at 1, 681 F.2d 746 (1982). What would otherwise be breaches are converted into claims for equitable adjustment, compen-sable under the contract. A contractor having a breach issue not so compensable may be obliged to declare the contract at an end and cease performance in order to avoid a waiver and save its rights. E.g., Ling-Temco-Vought, Inc. v. United States, 201 Ct.Cl. 135, 475 F.2d 630 (1973). A horrible example of the consequences of this happening is afforded by Spearin v. United States, 51 Ct.Cl. 155 (1916), aff'd, 248 U.S. 132 (1918) (per Justice Brandéis). There, in a petty dispute about relocating a sewer line, the contractor, Spearin, had to cease work and declare the contract at an end in order to protect his rights, as change order and disputes clause procedure was unavailable in that class of case at that date. A dispute over work that could have been done for $3,875 thus led to the government being mulcted $141,180.86 in breach damages plus the earnings of repro-curement contractors, plus a long delay in completing a much needed defense facility. See The United States Court of Claims, A History, 216 Ct.Cl. at 40-1. The *758 benefits from use of these remedial articles to keep things going and restrict damages is further explicated in General Dynamics Corp. v. United States, 218 Ct.Cl. 40, 585 F.2d 457 (1978). The suspension of work clause introduced in many government contracts (though not this one at bar) was later drafted and made standard to extend these benefits to instances of unreasonable delay in completion of the work caused by the government. Merritt-Chapman & Scott Corp. v. United States, 208 Ct.Cl. 639, 528 F.2d 1392 (1976). As is there shown, it was always intended that the advantages would extend to cases when no actual suspension order issued, and in such cases a constructive, or in plaintiffs phrase, fictitious order would be postulated. Call it fictitious if one will, that does not make it less useful. The equitable adjustment in that case covered injury that a real suspension order would have avoided, keeping men and equipment mobilized during the suspension period, as the absence of any real suspension order made necessary.
Plaintiff would have it that in enacting the cda, Congress swept away all these benefits without being advised by anyone to do so and without saying it was doing so. This proposition is wholly untenable. We hold, on the contrary, that the legal effectiveness of the clauses involved in converting what would otherwise be breach claims into claims for contract equitable adjustments is unaffected by whether the litigation is under the Contract Disputes Act or not. Being allowed to make a new appeal, No. 24564, and thereby invoke the board’s new jurisdiction over breach cases, does not mean the contractor can now reconvert equitable adjustment claims to breach claims. The clauses that previously barred its doing this do so still.
Plaintiff stresses before us that the board’s bifurcation of the case and its handling of it, partly under the old law, in Appeal No. 23689 and partly under the new law in Appeal No. 24564, will increase its costs and make litigation by an already bankrupt litigant more costly. Plaintiff enjoys the simplified procedure of the new law in part only, and to the extent of that part only, is better off than if the Contract Disputes Act had never been enacted. This is one of many instances of unfortunate complexity that have arisen in transitional cases. As we point out in another even more *759 complex such case, Warwick Construction, Inc. v. United States, 225 Ct.Cl. 567 (1980), the cda joins with the other available waivers of sovereign immunity and consents to suit in contract cases. Like the others, it must be strictly construed and carried out by courts and boards according to its terms, if cases are to remain within their jurisdiction. The board here appears to us to have done exactly what it was required to do. Neither the board nor ourselves are given authority to modify contract disputes procedures required by statute in order to relieve hardship.
We have not been asked to consider, and have not considered, whether the board is right in thinking that it has jurisdiction to award equitable adjustments under the contract changes articles in instances, if established, of alleged defective specifications, withholding of superior knowledge, and impossibility. We are not given any detail and of course we do not know whether the facts, when proven, will bring the claims within the clauses. It is not impossible they will, not impossible that in some circumstances they will be breach claims after all, but the board is entitled to the prior opportunity to investigate appeal allegations properly before it and determine the nature of the claims in light of the facts found. Our decision is not to be taken as holding that they or any of them are necessarily contract remediable. If any of these claims turn out to be breach claims only, they can be reinstated in Appeal No. 24564. We are only holding at this time that the ability of the board to deal with these claims as claims under the contract is not impaired by the cda, and that, where they can be so dealt with, they must be, because a claim remediable under a contract clause is not a breach and cannot be remediable as a breach.
Accordingly, defendant’s motion to dismiss is granted and the petition is dismissed.
Plaintiffs petition for a writ of certiorari was denied November 8,1982.