**TRIAX–PACIFIC, a Joint Venture, Appellant,**

**v.**

**Michael P.W. STONE, Secretary of the Army, Appellee.**

**91–1311.**

United States Court of Appeals, Federal Circuit.

March 10, 1992.

Timothy Miguel Willardson, Alpine, Utah, argued for appellant.

Joan M. Bernott, Sp. Litigation Counsel, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued for appellee. With her on the brief were Stuart M. Gerson, Asst. Atty. Gen., and David M. Cohen, Director. Also on the brief was John McC. Trainor, Engineer Attorney, Army Corps of Engineers, Norfolk, Va., of counsel.

Before MICHEL, LOURIE, and CLEVENGER, Circuit Judges.

LOURIE, Circuit Judge.

Triax–Pacific appeals from the January 9, 1991, decision of the Armed Services Board of Contract Appeals, ASBCA No. 36353, 91–2 B.C.A. (CCH) ¶ 23,724, 1991 WL 8533, denying Triax's claim for delay and additional costs associated with a contract to renovate family housing quarters. Because the Board correctly found that the contract delay was the fault of Triax, we affirm.

## BACKGROUND

On March 31, 1986, Triax was awarded a contract to perform improvements to family housing quarters at Fort Lee, Virginia. The work under the contract was divided into three phases, designated as Phase I, Phase II, and Phase III. Triax was required to commence work within 10 calendar days after receiving a notice to proceed; that requirement existed for each phase. The notice to proceed on Phase II was to be issued within 60 days after the notice to proceed on Phase I.

Earlier, Triax had been awarded another contract to perform substantially the same improvements on other units of the family housing quarters. Triax was 60 days late in completing performance on this earlier contract and was assessed $33,335 in liquidated damages. Triax's late performance on this earlier contract, as described by the Board, had "the effect of reducing the number of housing units available for occupancy" during Triax's performance on the second contract.

Shortly after Triax received notice to proceed on Phase I, the government told Triax that its late performance on the earlier contract might result in delaying the notice to proceed on Phase II of the second contract. Consequently, the notice to proceed on Phase II was not issued until 53 days after the August 8, 1986 deadline.

Triax submitted a certified claim for additional costs due to the delay. Upon denial of its claim by the contracting officer, Triax sought review by the Board. The Board found that the government's delay in issuing the notice to proceed on Phase II of the second contract was due to Triax's late performance on the earlier contract. Consequently, the Board determined that Triax's additional costs could not be recovered under the provisions of the second contract, specifically the Changes and Suspension of Work clauses, and that Triax's claim was not remediable under a breach of contract claim.

The Changes clause states that

The Contracting Officer may ... make changes in the work within the general scope of the contract. If any change under this clause causes an increase or decrease in the Contractor's cost of, or the time required for, the performance of any part of the work under this contract ... the Contracting Officer shall make an equitable adjustment.

48 C.F.R. § 52.243–4 (1990).

The Suspension of Work clause provides that

If the performance of all or any part of the work is, for an unreasonable period of time ... delayed ... by the Contracting Officer's failure to act within the time specified in this contract ..., an adjustment shall be made for any increase in the cost of performance of this contract. However, no adjustment shall be made under this clause for any ... delay ... to the extent that performance would have been so ... delayed ... *by any other cause, including the fault or negligence of the Contractor.*

48 C.F.R. § 52.212–12 (1990) (Emphasis added).

## ISSUE

Whether the Board erred in denying Triax's claim for the additional costs it incurred when Phase II of the contract was delayed?

## DISCUSSION

■ Our standard of review is set forth in 41 U.S.C. § 609(b) (1988), as follows: the decision of the [Board] on any question of law shall not be final or conclusive, but the decision on any question of fact shall be final and conclusive and shall not be set aside unless the decision is fraudulent, or arbitrary, or capricious or so grossly erroneous as to necessarily imply bad faith, or if such decision is not supported by substantial evidence.

The Board's interpretation of a contract is a legal conclusion which we review *de novo.* *George Hyman Constr. Co. v. United States,* 832 F.2d 574, 579 (Fed.Cir. 1987). However, the Board's interpretation is given careful consideration, as it has considerable experience and expertise in interpreting government contracts. *Alvin Ltd. v. United States Postal Serv.,* 816 F.2d 1562, 1564 (Fed.Cir.1987). In this case, the Board's interpretation of the contract was not erroneous.

Triax argues that the Board's determination that Triax was not entitled to recover under a breach of contract claim misconstrued the intent of the Contract Disputes Act and the holding of the court in *Johnson & Sons Erectors Co. v. United States,* 231 Ct.Cl. 753, *cert. denied,* 459 U.S. 971, 103 S.Ct. 303, 74 L.Ed.2d 283 (1982). Triax states that since the Board held that it cannot recover under the contract, it should be entitled to seek recovery under a breach of contract claim. We do not agree.

■ In *Johnson & Sons,* one of our predecessor courts stated that contract clauses providing for equitable adjustments remove the contractor's obligation to declare the contract at an end and cease performance in order to avoid a waiver and save its rights. *Id.* at 757. As a result, claims for breach of contract are claims for equitable adjustment. *Id.* at 758. There-

fore, contingencies contemplated by various contract clauses are remediable under those clauses of the contract, not as a breach of the contract. *Id.* at 759. In this case, the Suspension clause contemplates equitable adjustments for unreasonable delays in the performance of the contract. Therefore, in order for Triax to recover for the government's delay in issuing the notice to proceed on Phase II, any additional costs must be recovered under the Suspension clause. Thus, the Board did not err in deciding that Triax's claim was not remediable under a breach of contract claim.

■ Triax also argues that its additional costs should be recoverable under the Changes clause. Triax states that the Suspension clause cannot be applied when another clause of the contract covers the contingency. However, since the late issuance of the notice to proceed resulted in a delay of the contract, as opposed to a change in the work to be performed in the contract, it is the Suspension clause rather than the Changes clause which applies here.

■ The Suspension clause states that a contractor will not be entitled to an equitable adjustment "to the extent that [the contractor's] performance would have been so ... delayed ... by any other cause." Where the provisions of a contract are phrased in clear and unambiguous language, the words of those provisions must be given their plain and ordinary meaning. *George Hyman Constr. Co.,* 832 F.2d 574 at 579. That is the case here. The Suspension clause prevents recovery by Triax because the cause of the delay was due to its own performance, albeit performance on a previous contract.

Triax argues that preventing it from recovering the additional costs it incurred on this contract because of its late performance on the earlier contract would provide the government with a windfall, and leave Triax unjustly penalized, since it fully compensated the government for the cost of the injury for which it was legally responsible on the earlier contract. However, the "any other cause" provision of the clause is not so limited in scope. *Merritt–Chapman & Scott Corp. v. United States,* 528 F.2d

1392, 1397, 208 Ct.Cl. 639 (Ct.Cl.1976). In *Merritt–Chapman,* the court stated that a contractor is only entitled to recover under the Suspension clause when the government's actions are the *sole* proximate cause of the contractor's additional loss, and the contractor would not have been delayed for *any other reason* during that period. *Id.* Accordingly, we need to determine whether "any other cause" would have delayed Triax's performance.

■ Triax argues that the Board erred in finding that the government was not the sole proximate cause of Triax's delay in the performance of the contract. We do not agree. Although one cause of the resultant delay may have been the failure of the government to issue the notice to proceed within the contract deadline, another concurrent cause was Triax's late performance on the earlier contract. Pursuant to the contract, during the Phase II construction, the housing units could not be occupied. On the day the Phase II notice to proceed should have been issued, some families remained in each of the Phase II buildings. Due to Triax's late performance on the earlier contract, these families could not have been moved into the Phase I housing units. As a result, Triax could not begin performance on these occupied Phase II buildings until Triax completed the Phase I housing units. Therefore, the Board did not err in finding that Triax's late performance on the earlier contract was a concurrent cause of the delay. Accordingly, under the Suspension clause, Triax is prevented from recovering any additional costs it incurred as a result of this delay.

Triax also argues that it has already compensated the government for its late performance on the earlier contract and that, if it cannot obtain a contract adjustment in this case, it will in effect be paying twice for its earlier error. We do not accept this argument. Triax is not paying twice for its error, even if one considers that failure to obtain delay compensation will result in a cost to Triax. Regardless of its having compensated the government on the earlier contract, its ability to recover under the second is precluded by the plain fact that the delay was due to its own fault. The Suspension clause does not limit

the meaning of the word "fault" to fault under the same contract. Triax's fault, however adequately compensated for under the earlier contract, prevents it from recovering from the government for delays in the second contract.

Moreover, were Triax to prevail, then it is possible that the net result of liquidated damages paid by Triax on the earlier contract and an equitable adjustment recovered by Triax here could mean that Triax's late performance on the earlier contract would effectively have had no penalty. The two recoveries might cancel each other out, a result clearly not intended by the contract.

Triax also argues that the Board's findings were not supported by substantial evidence. Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *United States v. General Electric Corp.*, 727 F.2d 1567, 1572 (Fed.Cir. 1984). Applying this standard and having considered Triax's arguments, we conclude that the Board's findings were supported by substantial evidence.

## CONCLUSION

The Board did not err in denying Triax's claim for the additional costs it incurred when Phase II of the contract was delayed.

AFFIRMED.