61 F.3d 918
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
JIM SMITH CONTRACTING COMPANY, INC., Appellant,
v.
Togo D. WEST, Jr., Secretary of the Army, Appellee.
 No. 94-1383.
 United States Court of Appeals, Federal Circuit.
 June 2, 1995.
 
 Before ARCHER, Chief Judge, CLEVENGER and SCHALL, Circuit Judges.
 DECISION
 SCHALL, Circuit Judge.
 
 
 1
 Jim Smith Contracting Company, Inc. ("Smith") appeals from the decision of the United States Army Corps of Engineers Board of Contract Appeals ("Board") in Docket Nos. 5870 and 5883. In its decision, the Board denied Smith's claim for additional costs allegedly incurred under a contract to realign a section of the Red River in Louisiana. Because the decision of the Board is supported by substantial evidence and is free of legal error, we affirm.
 
 DISCUSSION
 I.
 
 2
 On September 30, 1987, the U.S. Army Corps of Engineers ("government") awarded Contract No. DACW38-87-C-0195 to Smith to realign a 2.8 mile stretch of the Red River waterway near Campti, Louisiana. The contract divided the project into five orders of work ("Items") as follows:
 
 
 3
 1. Excavating the new channel for the river ("pilot channel") but leaving the upstream end plugged, constructing a stone facing sustaining the channel embankment, and constructing dikes and revetments at the downstream end of the project;
 
 
 4
 2. Removing the plug at the upstream end of the pilot channel so the river could flow into it;
 
 
 5
 3. Building a closure dike at the point where the new channel departed from the old river channel;
 
 
 6
 4. Constructing an earthen closure embankment to seal off the old channel; and
 
 
 7
 5. Removing temporary structures used during construction.
 
 
 8
 The contract also contained an Order of Work clause. In accordance with that clause, each Item was to be started only after the preceding Item was completed.
 
 
 9
 Smith began contract performance in December 1987. At the beginning of April 1988, the level of the Red River dropped to the point where it became impossible for Smith to barge to the construction site the stone necessary to complete the first Item. Smith had not made contingency plans for this occurrence, and took approximately three months to resume transport of stone by an alternative arrangement. On October 14, 1988, Smith met with the contracting officer's representative ("COR") and sought permission to deviate from the Order of Work clause by removing the plug from the pilot channel (Item 2) and constructing the closure embankment across the old channel (Item 4) simultaneously. The COR responded that Smith still did not have the requisite stone or equipment present on site to complete the work as proposed, and had not submitted a plan to remove the plug from the upstream end of the pilot channel. Nevertheless, the COR offered to give Smith permission to deviate from the contract's order of work if Smith would agree to certain conditions. Smith declined the COR's offer.
 
 
 10
 On November 9, 1988, Smith submitted a plan for carrying out removal of the pilot channel plug and, for the second time, sought permission to remove the plug (Item 2) and to build the closure embankment (Item 4) simultaneously. On November 10, the COR approved the plan as reasonable but denied Smith's request to proceed, because of what he viewed as unfavorable river conditions and because Smith had not mobilized the equipment and materials needed to complete Items 2, 3, and 4. Smith completed Item 1 on November 11, but without permission from the COR to proceed, work was effectively stopped for the year. Smith resumed work on August 29, 1989, and completed all work on November 20, 1989.
 
 
 11
 In June 1990, Smith submitted a claim to the contracting officer ("CO") for $675,616.44 in additional costs allegedly incurred in performing the contract. Smith claimed that it cost more to perform the contract in 1989 because the river was deeper, faster, and wider than it had been in 1988. The CO granted Smith's claim in part and denied it in part. Smith appealed the CO's denial of its unreimbursed expenses to the Board, which sustained the CO's decision and denied the appeal.
 
 II.
 
 12
 We review a decision of the Board on any question of fact as final and conclusive unless the decision is "fraudulent, or arbitrary, or capricious or so grossly erroneous as to imply bad faith, or if such decision is not supported by substantial evidence." 41 U.S.C. Sec. 609(b) (1988). We review issues of law de novo. Triax-Pacific v. Stone, 958 F.2d 351, 353 (Fed.Cir.1992).
 
 
 13
 On appeal, Smith does not challenge any of the Board's findings of fact. Rather, as it did before the CO and the Board, it asserts that under the contract's Suspension of Work clause, it is entitled to its additional costs.[1] Because interpretation of contract provisions is a question of law, we review Smith's contentions de novo. Id. In order to succeed before the Board, Smith had to establish that the COR's refusal to allow it to proceed on November 10 was unreasonable and that the resulting delay caused the additional costs. See, e.g., Beauchamp Constr. Co. v. United States, 14 Cl.Ct. 430, 436 (1988) ("the function of the Suspension of Work clause is to provide a contractual basis for compensating the contractor for government-caused delays of an unreasonable duration") (emphasis in original). The Board concluded that "the COR's determination that the work could not proceed on November 10, 1988, was consonant with the dictates of [the Order of Work clause] and did not give rise to a compensable suspension of work." We agree.
 
 
 14
 Smith contends that the COR's refusal to allow work to proceed on November 10 was an unreasonable, and thus compensable, stop work order. Smith argues that the contract allowed the COR to stop work only if river conditions were unfavorable, and that on November 10 river conditions were not unfavorable, at least as defined in the contract. Smith's interpretation of the contract as limiting the COR's ability to stop work only because of river conditions, however, is too narrow. The Order of Work clause for Item 2 specified the conditions under which removal of the pilot channel plug was to begin. The clause provided as follows:
 
 
 15
 (2) Second Order of Work:
 
 
 16
 Remove the pilot channel plug. If river conditions are unfavorable for closures, the plug shall not be removed until the Contracting Officer's Representative determines that favorable conditions exist. Prior to removal of the plug, all material and equipment necessary to complete the Third and Fourth Orders of Work must be on the jobsite.
 
 
 17
 The clause made it clear that there were two requirements that had to be met before the pilot channel plug could be removed: favorable river conditions and mobilization of all the necessary equipment at the job site. The COR refused to allow Smith to proceed on November 10, both because of river conditions and because Smith had not mobilized the necessary equipment and materials called for in the contract.
 
 
 18
 Smith first takes issue with whether the COR properly determined that river conditions were unfavorable. We do not need to reach the issue of river conditions, however, to determine whether the COR acted reasonably in refusing to allow work to proceed on November 10. As just seen, the two requirements established in the Order of Work clause--river conditions and mobilization--operated independently of one another. The COR's decision to bar work on Item 2 would be justified if either of these requirements could not be met.
 
 
 19
 Smith does not dispute that its equipment was not mobilized at the job site on November 9 when it made its proposal to change the order of work. Rather, it argues that it was reasonable for it to wait to mobilize the additional equipment until it had the COR's agreement that Item 1 was completed. The problem with this argument is that it runs afoul of the plain language of the contract. The Order of Work clause did not give Smith the option of waiting to mobilize its additional equipment until it had the COR's agreement that Item 1 was completed. Rather, the clause stated that "[p]rior to removal of the plug, all material and equipment necessary to complete the Third and Fourth Orders of Work must be on the jobsite" (emphasis added). It is well settled that the government is entitled to have a contract provision enforced in accordance with its terms. Cascade Pacific Int'l v. United States, 773 F.2d 287, 291 (Fed.Cir.1985).
 
 
 20
 Smith contends additionally that the COR was unreasonable on October 14 when he refused to allow Smith to begin opening the plug and constructing the closure embankment simultaneously, only to accept the same proposal on November 10. We disagree. The function of the Order of Work clause was to protect each stage of work after it was completed and to minimize damage to the project. Adherence to the sequence of work was important to prevent damage to other realignment projects downstream. Smith's request to deviate from the order of work represented a substantial alteration in the terms of the contract; the COR was under no obligation to honor the request. Cascade Pacific, 773 F.2d at 291.[2]
 
 
 21
 Each party shall bear its own costs.
 
 
 
 [1]
 Suspension of Work (FAR 52.212-12): "[N]o adjustment shall be made under this clause for any suspension, delay, or interruption to the extent that performance would have been so suspended, delayed, or interrupted by any other cause including the fault or negligence of the Contractor."
 
 
 [2]
 We do not see how, under any circumstances, the COR's denial of Smith's October 14 request to deviate from the order of work could be deemed unreasonable. First, Smith had not submitted a plan showing how work was to be carried out under the proposed deviation. Second, as of that date, Smith had not performed according to the terms of the contract. Specifically, it had not completed Item 1 as the contract required