**SWEATS FASHIONS, INC., Appellant,**

v.

**PANNILL KNITTING COMPANY, INC., Appellee.**

No. 87–1229.

United States Court of Appeals,
Federal Circuit.

Nov. 13, 1987.

Simor L. Moskowitz, Fleit, Jacobson, Cohn & Price, Washington, D.C., argued for appellant. With him on the brief were Barbara A. Sundberg and Marsha G. Gentner.

John W. Burke, III, McGuire, Woods, Battle & Boothe, Richmond, Va., argued for appellee. With him on the brief was Elizabeth F. Edwards.

Before FRIEDMAN, Circuit Judge, MILLER, Senior Circuit Judge, and NIES, Circuit Judge.

NIES, Circuit Judge.

Sweats Fashions, Inc. (Fashions), appeals from the decision of the United States Patent and Trademark Office (PTO) Trademark Trial and Appeal Board, in Opposition No. 69,983 (May 9, 1986), which granted summary judgment in favor of Pannill Knitting Company, Inc., and dismissed the opposition. Fashions opposes the registration by Pannill of the mark ULTRA SWEATS (Serial No. 430,012) for sweatshirts and sweatpants (SWEATS disclaimed) alleging likelihood of confusion based on its prior use and registration of marks incorporating the word "sweats" and also fraud in Pannill's prosecution of the subject application. We *affirm*.

I

Fashions is the prior user and registrant of the following mark (Reg. No. 1,235,727), for a variety of active sportswear, the term "SWEATS" being disclaimed therein:

In addition, Fashions owns Reg. No. 1,162,-854 for SWEATS/BI/EBE and design for active sportswear and SWEATS and design as displayed above for swim suits and shoes, the latter without a disclaimer. It alleges use of these marks since September 5, 1979. In 1983, Pannill applied to register ULTRA SWEATS for sweatshirts and sweatpants, asserting first use in that year. Pannill admits it knew of Fashions' marks and registrations before filing its application as a result of some business contacts between them as well as from an attorney's trademark search report.

Initially, the Examiner rejected Pannill's application under section 2(d) of the Lanham Act, 15 U.S.C. § 1052(d) (1982), on the basis of the two Fashions' registrations covering goods identical to Pannill's (Nos. 1,235,727 and 1,162,854). Pannill responded by entering a disclaimer of exclusive right to use the word "sweats" apart from its mark; pointed out that the term was descriptive of its goods as shown by several third-party marks, including the prior mark SUPER SWEATS for sweatsuits, Reg. No. 1,158,184; argued that Fashions' marks were dominated by the design features, not the disclaimed term "sweats"; and urged that there is no likelihood of

confusion between the respective marks because the only common feature is descriptive. The Examiner then withdrew the rejection, and Pannill's mark was published for opposition.

Fashions opposed Pannill's application on three grounds: one count of likelihood of confusion and two counts of alleged "fraud on the Patent and Trademark Office." After some discovery, Pannill filed a motion for summary judgment on all three counts. It supported its motion with an affidavit of an officer of its company with exhibits attached showing extensive use of "sweats" as the name for sweatshirts and sweatpants; additional third-party registrations, with disclaimers of "sweats," all for sportswear; an affidavit of the attorney who prosecuted the application explaining his error during prosecution in misidentifying certain asserted third-party registrations; and an affidavit by its officer affirming his belief in the company's exclusive rights in ULTRA SWEATS. Fashions opposed the motion on the grounds that factual issues had to be resolved and that there was a likelihood of confusion with its marks. The board granted summary judgment, holding that there was no genuine issue created on the record with respect to any material fact on any count and that Pannill was entitled to judgment as a matter of law. Fashions' petition to file notice of appeal one day late was initially denied, 231 USPQ 560 (Dec. Comm'r Pat.1986), but was then allowed on reconsideration, 2 USPQ2d 1380 (Dec. Comm'r Pat.1987).

## II

In contrast to implications drawn from earlier Supreme Court decisions, summary judgment may no longer be regarded as a disfavored procedural shortcut. Rather, the Court has counseled that summary judgment is a salutary method of disposition "designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986); *see also Anderson v. Liberty Lob-*

*by, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Fed.R.Civ.P. 56, made applicable to proceedings before the board by 37 C.F.R. § 2.116(a) (1987), provides in pertinent part:

(c) ... The judgment sought [on a motion for summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law....

....

(e) .... When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

■ Where a movant has supported its motion with affidavits or other evidence which, unopposed, would establish its right to judgment, the non-movant may not rest upon general denials in its pleadings or otherwise, but must proffer countering evidence sufficient to create a genuine factual dispute. A dispute is *genuine* only if, on the entirety of the record, a reasonable jury could resolve a factual matter in favor of the non-movant. *Anderson,* 106 S.Ct. at 2510. This court has delineated the non-moving party's duty in this respect, as follows:

In countering a motion for summary judgment, more is required than mere assertions of counsel. The non-movant may not rest on its conclusory pleadings but, under Rule 56, must set out, usually in an affidavit by one with knowledge of specific facts, what specific evidence

could be offered at trial. *Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd.*, 731 F.2d 831, 836, 221 USPQ 561, 564 (Fed.Cir.1984).

*Pure Gold, Inc. v. Syntex (U.S.A.), Inc.*, 739 F.2d 624, 626–27, 222 USPQ 741, 743 (Fed.Cir.1984). Moreover, the *Celotex* opinion, after advising that the burden is *not* on the movant to *produce evidence* showing the *absence* of a genuine issue of material fact, states:

> Instead, as we have explained, the burden on the moving party may be discharged by "showing"—that is, pointing out to the District Court—that *there is an absence of evidence to support the nonmoving party's case.*

*Celotex*, 106 S.Ct. at 2554 (emphasis added).

## III

### LIKELIHOOD OF CONFUSION

#### A

On the issue of likelihood of confusion, the board's analysis was as follows:

> While the goods of the parties must, for our purposes, be considered identical, the word SWEATS in the relevant registrations of opposer and in the application has been disclaimed. These disclaimers are tantamount to admissions that neither party has the exclusive right to use this descriptive term.
>
> In support of its position that confusion is not likely, applicant has submitted the affidavit of its vice president, stating that upon his knowledge and experience with the fleece garment industry, the word "sweats" is a term used by consumers as well as by members of trade of which he is a part to refer to or describe fleece garments for sportswear including sweatpants and sweatshirts. Applicant's vice president has also attested that certain copies of pages from trade magazines and other materials are true and accurate. These materials dem-

onstrate that the word "sweats" is a generic term used in the trade to refer to sweatpants or sweatshirts. The following examples are illustrative:

> ALPHA SHIRT CO.
>
> Our 48th year distributing basic imprintable sportswear. In-depth inventory of tees, sweats, hoods, staff shirts, interlock caps, warm-up jackets in all weights ...
>
> \*  \*  \*  \*  \*  \*
>
> JRT helps keep you fit with sweats *These are the sweats to get!*
>
> \*  \*  \*  \*  \*  \*
>
> Introducing Nazareth "Sweats" for Kids ... Big people aren't the *only* ones wearing sweats these days ... Discover the potential of the children's market with Nazareth sweats for kids ...
>
> \*  \*  \*  \*  \*  \*
>
> NEW!  OVER–SIZE  FASHION "SWEATS"
>
> The Latest and Hottest Over–Sized Dolman Sleeved Sweats in the Latest 7 Colors ...  PLUS We've added Hanes Fleece Sweats.
>
> \*  \*  \*  \*  \*  \*
>
> YOUTH & ADULT SWEATS SPORTSWEAR BY RUSSEL
>
> \*  \*  \*  \*  \*  \*
>
> SUMMER SPECIALS Ts ... Caps ... Sweats
>
> Our best quantity prices on sweats from as low as ...
>
> \*  \*  \*  \*  \*  \*
>
> In addition, applicant has submitted copies of third-party registrations for marks including the word SWEATS, wherein that word has been disclaimed apart from the mark (SUPER SWEATS for sweatsuits, SAFETY SWEATS for athletic clothing of various types, STURDY SWEATS for shirts, and DRY SWEATS for sweatsuits, tops and bottoms).

Inasmuch as the only similar element in the marks of the parties is a generic or highly descriptive term, and since the remainder of the respective marks is sufficiently distinguishing, we agree with applicant that there is no genuine issue with respect to likelihood of confusion. Accordingly, applicant's motion for summary judgment is granted in its entirety and the opposition is dismissed.

Opposition op. at 7–11 (footnotes omitted).

Fashions' argument of error in the board's decision begins under the title:

"THE BOARD'S FINDING, WITHOUT TRIAL, THAT SWEATS FASHIONS' REGISTERED SWEATS TRADEMARK IS GENERIC IS UNSUPPORTED BY THE RECORD AND IS CLEARLY ERRONEOUS."

Such blatant mischaracterization of the board's decision lays no foundation for persuasive analysis. For example, based on its false premise, Fashions argues that its licensees would not pay royalties if its trademark were generic. To state the obvious, the board found that the evidence of record showed that the word "sweats"— *not Fashions' mark*—is a generic or highly descriptive term for sweatpants and sweatshirts. That ruling does not amount to a collateral attack on Fashions' marks or registrations. As stated in *In re National Data Corp.*, 753 F.2d 1056, 1059–60, 224 USPQ 749, 752 (Fed.Cir.1985) (footnote omitted):

The registration affords *prima facie* rights in the marks *as a whole*, not in any component. Thus, a showing of descriptiveness or genericness of *part* of a mark does not constitute an attack on the registration.

Thus, Fashions' evidence that it has licensees creates no genuine issue of material fact with respect to the descriptiveness or genericness of the term "sweats" as applied to sweatpants and sweatshirts. A generic or descriptive term may form part of a valid mark. *Id.*

Fashions next points to the absence of the term "sweats" from dictionary and fashion reference books it has cited. In some instances the omission of an expression from an authoritative reference source may suggest that the word is neither generic nor descriptive, but such a scintilla of evidence in support of Fashions' position is insufficient, under the test set forth by the Supreme Court in *Anderson*, to create a *genuine* factual issue which would preclude summary judgment in the face of the strong evidence showing that "sweats" is commonly used as a descriptive name for fleece garments, particularly sweatshirts and sweatpants.

At oral argument, Fashions' counsel expressed regret at not having presented an affidavit of Fashions' president to the effect that "sweats" is not a generic or descriptive term for sweatshirts and the like. That would have availed little. Mere conclusory statements and denials do not take on dignity by placing them in affidavit form. *Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.*, 731 F.2d 831, 836, 221 USPQ 561, 564 (Fed.Cir.1984) ("The party opposing the motion must point to an evidentiary conflict created on the record at least by a counter statement of a fact or facts set forth in detail in an affidavit by a knowledgeable affiant. Mere denials or conclusory statements are insufficient."); *see also Pure Gold*, 739 F.2d at 627, 222 USPQ at 743; *Union Carbide Corp. v. American Can Co.*, 724 F.2d 1567, 1572, 220 USPQ 584, 589 (Fed. Cir.1984).

In contrast, the affidavit by Pannill's vice president with respect to specific facts indicating "sweats" is a highly descriptive or generic term for fleece garments, the trade advertisements showing such usage, Fashions' own registrations, and third-party registrations for marks incorporating SWEATS in which the word "sweats" is disclaimed,[1] all support Pannill's position that "sweats" is a generic or

1. Third-party registrations are admissible and competent to negate a claim of exclusive rights

descriptive word for sweatshirts and sweatpants. That evidence stands uncontradicted and amply supports the board's conclusion that there is no genuine dispute over the generic or highly descriptive nature of the word "sweats" for such goods.[2]

### B

Fashions broadly attacks the board's conclusion on the issue of likelihood of confusion, asserting that it erred as a matter of fact and law in failing to consider the appropriate factors set forth in *In re E.I. DuPont DeNemours & Co.*, 476 F.2d 1357, 1361, 177 USPQ 563, 567 (CCPA 1973).

■ As an initial matter, we must lay to rest Fashions' argument that because the parties dispute likelihood of confusion, the board could not resolve that "issue of fact" on summary judgment, citing case law from another circuit. The uniform precedent of this court is that the issue of likelihood of confusion is one of law. *Bongrain Int'l (Am.) Corp. v. Delice de France, Inc.*, 811 F.2d 1479, 1485, 1 USPQ2d 1775, 1779 (Fed.Cir.1987); *In re Bed & Breakfast Registry*, 791 F.2d 157, 158, 229 USPQ 818, 818–19 (Fed.Cir.1986); *Kimberly–Clark Corp. v. H. Douglas Enters., Ltd.*, 774 F.2d 1144, 1146, 227 USPQ 541, 542 (Fed. Cir.1985); *Specialty Brands, Inc. v. Coffee Bean Distribs., Inc.*, 748 F.2d 669, 671, 223 USPQ 1281, 1282 (Fed.Cir.1984); *Giant Food, Inc. v. Nation's Foodservice, Inc.*, 710 F.2d 1565, 1569, 218 USPQ 390, 394 (Fed.Cir.1983). Thus, the board may unquestionably resolve that issue on summary judgment.

Fashions correctly sets out the premise that the descriptive significance of a prior mark does not *a fortiori* prevent it from operating as a bar to registration by another of a mark which is likely to cause confusion. *See National Data*, 753 F.2d at 1060, 224 USPQ at 752. It then asserts that had the board considered each of the respective marks here as a whole, and properly weighed the *DuPont* factors, particularly Pannill's wrongful intent, summary judgment would not have been granted.

■ Contrary to Fashions argument, there is no evidence that Pannill acted in bad faith in adopting its mark. Prior to any use, Pannill obtained a trademark search on the mark ULTRA SWEATS and an opinion of counsel (which is of record) that the mark was available, *inter alia*, notwithstanding Fashions' marks. Fashions would have us infer bad faith because of Pannill's awareness of Fashions' marks. However, an inference of "bad faith" requires something more than mere knowledge of a prior similar mark. That is all that the record here shows.

Fashions attempts to buttress its charge of wrongful intent with an argument that its printing style is copied on Pannill's labels. Not only is this argument not supported in fact by the specimens of record, it does not appear to have been made to the board and may not be advanced for the first time on appeal.

As for other factors which the board purportedly did not consider, the trier of fact must consider factors in the *DuPont* list "when of record." *DuPont*, 476 F.2d at 1361, 177 USPQ at 567. Fashions cannot assert, as a ground of legal error, that the board failed to consider a factor, such as the "fame of its mark," when Fashions failed to provide probative evidence relating thereto.

Finally, Fashions asserts error in that the board failed to consider the marks as a whole, i.e., that it ignored the common feature "sweats" in deciding the issue of likeli-

---

in "sweats" and the disclaimers are evidence, albeit not conclusive, of descriptiveness of the term. *See National Data*, 753 F.2d at 1059, 224 USPQ at 751; *Tektronix, Inc. v. Daktronics, Inc.*, 534 F.2d 915, 917, 189 USPQ 693, 694–95 (CCPA 1976).

2. Contrary to appellant's statements, the board did not find "that SWEATS is generic of all of Sweats Fashions' shoes, swimsuits, caps, visors, bags...." That "sweats" is not generic or descriptive of those goods, however, is irrelevant to the issue here.

hood of confusion. That would have been error. However, it is not error in articulating reasons en route to a conclusion to indicate that some features of a mark are more distinctive than others. *National Data*, 753 F.2d at 1060, 224 USPQ at 752. Our precedent holds that unless an opposer establishes secondary meaning in a mark which is descriptive in its entirety, an opposition cannot be successfully maintained on the ground of likelihood of confusion as to source inasmuch as the opposer's mark, in the absence of proof of distinctiveness, has not been shown to indicate *source*. As stated in *Otto Roth & Co. v. Universal Foods Corp.*, 640 F.2d 1317, 1322, 209 USPQ 40, 44 (CCPA 1981):

> We also observe that the inquiry is not simply whether confusion is likely, but whether confusion as to source is likely.... Further, the issue is not merely whether public confusion as to source is likely, but whether the identification of source results from trade identity rights in opposer which the law will recognize.
>
> Under section 2(d), as utilized in an opposition, confusion, or a likelihood thereof, is not recognized where one claiming to be aggrieved by that confusion ... has not proved that that which he claims identifies him as the source of goods or services actually does so.

*Id.* at 1322, 209 USPQ at 44–45 (citations omitted). In this case, Fashions has not shown secondary meaning in the word "sweats" *per se* as its trademark for sweatshirts and sweatpants, and on its face, Fashions' registration for such goods protects only the particular manner in which it displays the word "sweats."

■ We agree with the analysis of the board in *In re Carolyn's Candies, Inc.*, 206 USPQ 356, 361 (TTAB 1980), in which a comparable claim to a mark was presented. An applicant had no proprietary rights in the words "yogurt bar," which were displayed, however, in a distinctive manner. Although it held the applicant in *Carolyn's* entitled to a registration, the board concluded that the registrant's rights would reside solely in the particular style of display of the words. *See also United States Steel Corp. v. Vasco Metals Corp.*, 394 F.2d 1009, 1011–12, 157 USPQ 627, 629 (CCPA 1968) (applicant's rights in CONSUMABLE VACUUM MELTED "reside entirely in the particular *design arrangement* of these three descriptive words"). Applying that premise here, because Pannill does not encroach on Fashions' protected *display* of "sweats," we agree with the board that there is no likelihood of confusion between Fashions' and Pannill's marks within the meaning of section 2(d) despite the commonality of the word "sweats" in both marks.

## IV

### FRAUD

■ We first dispose of Fashions' assertion that the board erred in granting summary judgment on its fraud claims without affording it the opportunity to pursue discovery and cross-examine Pannill's attorney. Under the circumstances here, that argument is unavailing. There is nothing which indicates Fashions was cut off in discovery. It simply chose not to invoke the protection of Rule 56(f) if it had grounds for doing so.[3] As this court stated in rejecting similar arguments:

> Summary judgment need not be denied merely to satisfy a litigant's speculative hope of finding some evidence [through discovery] that might tend to support a complaint. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569

---

3. Rule 56(f) provides:

Should it appear *from the affidavits of a party opposing the motion* that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just. [Emphasis added.]

(1968). Further litigation in this case not only would put the parties to unnecessary expense but also, equally important, would be wasteful of judicial resources.

*Pure Gold,* 739 F.2d at 627, 222 USPQ at 744 (footnote omitted). A party may not simply assert in its brief that discovery was necessary and thereby overturn summary judgment when it failed to comply with the requirement of Rule 56(f) to set out reasons for the need for discovery in an affidavit. *Id. See also Hebert v. Wicklund,* 744 F.2d 218, 222 (1st Cir.1984); *Wallace v. Brownell Pontiac–GMC Co.,* 703 F.2d 525, 527 (11th Cir.1983).

### A

With respect to the merits of Fashions' first count of fraud, Fashions alleged that Pannill committed fraud on the PTO by misleading the examiner during prosecution. After receiving a rejection because of likelihood of confusion with Fashions' marks shown in Reg. Nos. 1,162,854 and 1,235,727, Pannill's attorney responded by citing purported third-party marks which include the word "sweats." One of these was Fashions' Reg. No. 1,235,727, misidentified by the serial number used to identify the application on which it issued. Another was a pending application of Fashions, not a third-party registration. Pannill's attorney explained (by affidavit) that the error of confusing serial numbers and registration numbers was inadvertent. The board noted the truth of the underlying assertion, that third-party registrations incorporating SWEATS existed, and accepted the attorney's explanation of inadvertent error. Thus, the board held there was no genuine issue of any material fact on this fraud count.

■ Fashions asserts that whether Pannill's attorney acted inadvertently or with wrongful intent is a disputed issue of fact and, thus, summary judgment should not have been granted. No evidentiary dispute was created, however, on this issue. Moreover, we fail to see that the alleged misrep-resentations to the examiner somehow affected the allowance of Pannill's application, i.e., that the statement was "material."

As this court has stated, "[a] critical factor in a motion for summary judgment in [any] case.... is the determination by the court that there is no *genuine* issue of *material* fact.... The *materiality* of facts is viewed in light of the legal standard to be applied to the case." *Barmag Barmer,* 731 F.2d at 835–36, 221 USPQ at 564–65. Fashions does not challenge the board's finding that Pannill's substantive argument itself was true. There are, in fact, a number of third-party registrations for marks incorporating and disclaiming the word "sweats." Moreover, it is uncontroverted that some uses are prior to Fashions' use. We are wholly unpersuaded that, but for the misidentification of serial numbers as registration numbers and of a registration's owner, the examiner would not have withdrawn his refusal to register the ULTRA SWEATS mark. Accordingly, we agree with the board that Fashions has not raised a genuine issue of material fact on this allegation of fraud.

### B

Fashions' final count alleged fraud by Pannill's filing of the subject application with knowledge that Fashions had superior rights in a mark with which Pannill's mark was likely to cause confusion. The pleading appears to be that Pannill's application includes a false declaration of exclusive rights in the mark ULTRA SWEATS, which declaration is false because Pannill knew or should have known that the mark is unregistrable in view of Fashions' mark. Because Pannill's mark is registrable, this count need not be considered further.

### V

Fashions raises no factual dispute which is material to the resolution of either the issue of likelihood of confusion or the issues of fraud. Further, the board's conclu-

sion on the issue of no likelihood of confusion is correct as a matter of law. Accordingly, the grant of summary judgment was entirely in order, and the board's decision is affirmed.

AFFIRMED.