**Slip Op. 99-60**

# UNITED STATES COURT OF INTERNATIONAL TRADE

**Before: Judge Judith M. Barzilay**

------------------------------------------------------- **x**

SASSY, INC.                                                           **:**

                     Plaintiff,                       **:**          Court No.  95-07-00882

                 v.                                     **:**

UNITED STATES OF AMERICA,                  **:**

                 Defendant                         **:**

------------------------------------------------------- **x**

[Cross motions for summary judgment denied.]

Decided: July 13, 1999.

Neville, Peterson & Williams (John M. Peterson) for Plaintiff.
David W. Ogden, Acting Assistant Attorney General, Joseph I. Liebman, Attorney-in-Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice (Bruce N. Stratvert), Joseph M. Spraragen, Office of Assistant Chief Counsel, International Trade Litigation, United States Customs Service, of counsel, for Defendant.

## MEMORANDUM DECISION AND ORDER

**BARZILAY,  JUDGE:**

This case is before the Court on Plaintiff's Motion for Partial Summary Judgment and

Defendant's Cross-Motion for Summary Judgment.  The merchandise at issue is infants' pacifiers

manufactured by Plaintiff and entered at Detroit, Michigan on July 21, 1993.  The goods entered

under subheading 3926.90.15 of the Harmonized Tariff Schedule of the United States ("HTS"), as

"Other articles of plastics and articles of other materials of headings 3901 to 3914: Other: Nursing

nipples and pacifiers", and duty free entry was asserted under the Generalized System of Preferences

("GSP"). The United States Customs Service ("Customs") liquidated the entry on September 13,

1995 under 3926.90.15 HTS but assessed duties at the rate of 3.1% *ad valorem*. Customs'

assessment of duties was based on its determination that the goods were not the growth, product or

manufacture of a beneficiary developing country ("BDC"). *See* Customs Headquarter Ruling 55879

(June 6, 1995). Plaintiff protested Customs' liquidation and upon denial of its protest commenced

this action. The Court has jurisdiction under 28 U.S.C. § 1581(a) (1994).

## I. PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT ON WHETHER THE ARTICLES ARE THE GROWTH, PRODUCT OR MANUFACTURE OF HUNGARY

Plaintiff argues that it is entitled to partial summary judgment solely on the issue of whether

the goods are the growth, product or manufacture of a BDC. Plaintiff argues that the four

components of the pacifier manufactured in Austria, which is not a BDC, undergo a substantial

transformation in Hungary, a BDC at the time in question. Additionally, Plaintiff maintains that the

process in Hungary is not a simple combining operation that would result in the goods being denied

duty-free treatment pursuant to the terms of the GSP statute. *See* 19 U.S.C. § 2463(b)(2)(A) (1994).

Defendant argues that it is entitled to summary judgment on two of the provisions of the

statute at issue, specifically, that in addition to the goods not being the growth, product or

manufacture of a BDC, the goods are not imported directly into the United States.[1] Defendant argues

that the process in Hungary constitutes a simple combining and thus the goods do not qualify for

---

[1] The Court denied Defendant's Motion for Summary Judgment with respect to the imported directly provision of the statute at the oral argument held June 15, 1999, on the cross motions. Its grounds for doing so are restated herein.

duty-free treatment.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." USCIT R. 56(d). Moreover, summary judgment is a favored procedural device to "'secure the just, speedy and inexpensive determination of an action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1); *Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1562 (Fed. Cir. 1987). But, "summary proceedings are not intended to substitute for trial when it is indeed necessary to find material facts." *Scripps Clinic & Research Foundation v. Genentech, Inc.*, 927 F. 2d 1565, 1570 (Fed. Cir. 1991) (citing *Meyers v. Brooks Shoes, Inc.*, 912 F.2d 1459, 1461 (Fed. Cir. 1990). Whether a disputed fact is material is identified by the substantive law and whether the finding of that fact might affect the outcome of the suit. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Because the Court finds that genuine issues of material fact exist, it denies both Plaintiff's Partial Motion for Summary Judgment and the remainder of Defendant's Motion for Summary Judgment.

By examining the pleadings and admissions on file and by interrogating counsel at oral argument, the Court concludes that certain material facts are in good faith controverted. The legal issue to be decided is whether the components of the pacifier which entered Hungary from Austria underwent a substantial transformation for GSP purposes. The statute, however, expressly excludes from GSP eligibility articles that undergo merely simple combining or packaging operations in the BDC. *See* 19 U.S.C. 2463(b)(2)(A). Thus, whether the pacifiers are GSP eligible requires findings of fact on what processes occur in Hungary, and those findings will determine the outcome of the

substantial transformation issue.

The following facts are undisputed.[2] Four fabricated components, manufactured in Austria: a latex nipple, without air hole openings; a molded, ventilated plastic shield; a plastic retainer plug; and a circular plastic handle are shipped to Hungary. *Pl's Statement of Material Facts not in Dispute*, at ¶ 3 ("*Pl.'s Statement*"); *Def.'s Resp. to Pl.'s Statement of Material Facts not in Dispute*, at ¶ 3 ("*Def.'s Resp.*"). In Hungary each component is inspected for flaws and defects and then sent to pre-assembly stations where trained workers align various components by hand using a machine costing 2,400,000 Austrian Shillings. *Pl.'s Statement*, at ¶ 5, 10; *Def.'s Resp.*, at ¶ 5, 10. The aligned components are moved to an Ulti Ultrasonic welding system for assembly where a machine aligns the components to fix them together for welding. *Pl.'s Statement*, at ¶ 5; *Def.'s Response*, at ¶ 5. Then the components are welded by ultrasonic waves for between .02 and 2 seconds, which partially melts them together to form a strong seal. *Pl.'s Statement*, at ¶ 5; *Pl's Resp. to Def.'s Statement of Additional Facts as to which There Is No Genuine Issue to Be Tried*, at ¶ 1; *Def.'s Resp.*, at ¶ 5; *Def.'s Statement of Additional Facts as to which There Is No Genuine Issue to Be Tried*, at ¶ 1. The final product is then inspected, tested, packaged for retail sale, and shipped to Austria before arriving in the United States. *Pl.'s Statement*, at ¶ 5; *Pl.'s Resp. to Def.'s Statement of Additional Facts as to which There Is No Genuine Issue to Be Tried*, at ¶ 2; *Def't's Resp.*, at ¶ 5; *Def.'s Statement of Additional Facts as to which There Is No Genuine Issue to Be Tried*, at ¶ 2.

At oral argument the Court attempted to clarify Defendant's admissions with regard to the

---

[2] The Court notes that Defendant failed to deny the processes set forth by Plaintiff, except to deny that "laser coating" occurred, and to aver that other processes may occur once the pacifiers left Hungary. *See Def.'s Resp.*, at ¶ 5. As such, USCIT R. 56(i) requires that the remainder of Plaintiff's statements which were not controverted are deemed admitted.

extent of the testing and inspection occurring in Hungary. Counsel would not admit that anything beyond simple inspection and testing operations were performed. Additionally, Defendant's counsel maintained its denial that any process known as laser coating was performed in Hungary. Plaintiff did not specify the nature and extent of the inspection and testing conducted in Hungary and the Court must construe Defendant's admission as limited to what its counsel was willing to concede at oral argument. Accordingly, the Court cannot appropriately dispose of the question of whether a substantial transformation occurred by means of summary judgment because the facts in dispute concern the very nature and extent of the processes that occur in Hungary. As noted above, these findings of fact will dictate the outcome of the substantial transformation issue. Thus, it is necessary for the Court to make findings of fact on what occurs from the time the components arrive in Hungary until the time they leave to determine whether the pacifiers are the growth, product or manufacture of Hungary.

## II.   DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

Defendant asserts, erroneously, that its motion, which denies that the articles were imported directly from Hungary, obligates Plaintiff to put forth evidence supporting its position that the articles are imported directly from Hungary. *See Def's Memo.* at 5. USCIT R. 56(f) says otherwise. A party opposing summary judgment is required to submit affidavits, answers to interrogatories or depositions only if the movant has submitted such evidence. USCIT R. 56(f). Here, the Defendant has not submitted any evidence of the type to invoke USCIT R. 56(f). Defendant is correct that if it establishes the absence of a genuine issue of material fact it is entitled to judgment in its favor. *See Avia Group International, Inc. v. L.A. Gear California, Inc.*, 853 F.2d 1557, 1560 (Fed. Cir. 1988) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). However, the evidence and all

reasonable inferences drawn therefrom must be resolved in a light most favorable to the nonmovant. *Id.* Plaintiff, by moving for partial summary judgment solely on the growth, product, or manufacture issue, necessarily asserts that a genuine issue of material fact exists that must be proved at trial on the remaining requirements of the GSP statute. The only indication of whether the articles were imported directly from Hungary presently before the Court are the assertions made by counsel for both sides in their briefs. While Plaintiff admits that the articles return to Austria after processing in Hungary and before importation into the United States, Plaintiff avers that the articles do not enter the stream of commerce while in Austria. Defendant does not explain its assertion that the articles are not imported directly, indeed it states that the bill of lading lists the United States as the destination. Defendant provides no evidentiary basis for its position that the articles do not enter the United States directly from Hungary. Accordingly, viewing the evidence in a light most favorable to Plaintiff, the nonmovant, and resolving all reasonable inferences in its favor, the Court finds Defendant has not satisfied its burden of proof to entitle it to summary judgment.

## III.    CONCLUSION

For the foregoing reasons it is hereby,

ORDERED that Plaintiff's Partial Motion for Summary Judgment is denied; and it is further

ORDERED that Defendant's Cross Motion for Summary Judgment in its entirety is denied; and it is further

ORDERED that in the interests of judicial economy trial should proceed on all issues raised in Plaintiff's complaint; and it is further

ORDERED that the parties shall consult and, to the extent they are able to agree, submit a proposed order governing trial preparation, in the manner provided by the Court, within thirty days from the date of this decision.  In the event a trial is not desired, the parties are to submit a joint status report to the Court within thirty days.

Dated: _____                         _____
        New York, NY                                       Judith M. Barzilay
                                                           Judge

ERRATA

*Sassy, Inc. v. United States of America*, Court No. 95-07-00882, Slip Op. 99-60, dated July 13, 1999.

On p. 2, line 5, "See Customs Headquarter Ruling 55879" should read "See Customs Headquarter Ruling 558979"

July 14, 1999