**PUBLIC SERVICE COMPANY OF OKLAHOMA, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 08–501 C.

United States Court of Federal Claims.

Feb. 16, 2010.

Tom Q. Ferguson, Tulsa, OK, for plaintiff.

Kent C. Kiffner, United States Department of Justice, with whom were Tony West, Assistant Attorney General, Jeanne E. Davidson, Director, Martin F. Hockey, Jr., Assistant Director, Washington, DC, for defendant. Lisa M. Satterfield, United States Army Litigation Division, Arlington, VA, of counsel.

## OPINION

BUSH, Judge.

This case is before the court on defendant's motion for summary judgment under Rule 56 of the Rules of the United States Court of Federal Claims (RCFC). The scope of the parties' briefing is restricted to a question of whether the United States waived one of its contract rights. For the reasons set forth below, the court grants defendant's motion.

## BACKGROUND[1]

Plaintiff Public Service Company of Oklahoma (PSO) is an electric utility company operating in certain parts of Oklahoma. Compl. at 1. The McAlester Army Ammunition Plant (MCAAP) of the United States Army is located in one of PSO's service areas, and PSO is the exclusive provider of retail electric service in that part of Oklahoma. MCAAP and PSO entered into Contract No. DAAA31–97–C–0002 (the contract) on June 9, 1997 to "[p]rovide electric power

[1]. The facts recounted here are taken from the parties' pleadings and briefs, and appear to be undisputed, unless otherwise noted. The court makes no findings of fact in this opinion. A

and energy to fulfill MCAAP's electric service requirements." Compl. Ex. A at 1, 3.

The contract is not merely a simple agreement whereby MCAAP has agreed to pay PSO for the electricity it consumes. Instead, the contract establishes a relationship between the parties which includes, most importantly, provisions governing the price MCAAP pays for the electricity provided by PSO, provisions governing the price PSO pays MCAAP for federal hydro power MCAAP has purchased from the United States Department of Energy, and a provision that allows MCAAP a "setoff" against its payment obligation to PSO in the amount of PSO's payment obligation to MCAAP. *See* Compl. Ex. A at 24. This dispute focuses almost entirely on the price PSO must pay MCAAP for federal hydro power.

### I. Federal Energy

The setoff mitigating MCAAP's payment obligations to PSO derives from MCAAP's relationship with the Southwestern Power Administration (SWPA), part of the United States Department of Energy. The SWPA provides hydro-generated power, or what the contract calls "Federal Energy," to MCAAP through PSO's transmission services and the contract enables MCAAP to reduce its payment obligation to PSO based on the amount of Federal Energy MCAAP has purchased from SWPA (and which is immediately sold to PSO). Compl. ¶ 20, Ex. A at 24. The amount of the setoff is governed by a formula set forth in the contract. Compl. Ex. A at 22.

### II. The Contract

The contract at issue here did not initiate electric service to MCAAP. Prior to June 1997, the same three entities were involved and the same types of transfer of energy occurred: SWPA sold Federal Energy to MCAAP, and PSO provided electricity ("PSO Energy") and transmitted Federal Energy to MCAAP. These relationships were substantially modified by the contract entered into on June 9, 1997. *See* Compl. Ex. A. The contract term had an initial period beginning

fuller recitation of background facts may be found in this court's earlier opinion. *Pub. Serv. Co. of Okla. v. United States*, 88 Fed.Cl. 250, 251–56 (2009).

on June 1, 1997 and ending on December 31, 1998. Compl. Ex. A at 6. The contract would remain in force, year to year, "if MCAAP continues to take service after the expiration of the initial period, . . . until terminated by the party desiring termination giving the other party at least 12 months prior written notice." *Id.* The contract has never been modified, and remains in force today.

## III. The Dispute

Reducing this dispute to its simplest terms, plaintiff interprets the contract to require that PSO pay MCAAP for any Federal Energy acquired from SWPA at a price that reflects the relevant SWPA rate schedule in effect in 1997, even if that rate schedule has been superseded and MCAAP is paying more for the Federal Energy it acquires from SWPA.[2] Defendant counters that the contract requires PSO to pay MCAAP for Federal Energy according to the rate schedule in effect at the time that Federal Energy is acquired from SWPA. The parties' dispute appears to have first surfaced many years after the initial period of the contract had expired. On July 22, 2009, the court granted summary judgment in favor of defendant, holding that "the setoff formula . . . indicates that applicable, current SWPA rate schedules . . . will determine the cost of Federal Energy to PSO." *Pub. Serv. Co. of Okla. v. United States,* 88 Fed.Cl. 250, 259–60 (2009). The court did not reach, however, the issue of a possible waiver by the United States of its contract rights to have current SWPA power rates employed in the setoff formula determining PSO's payment obligations to MCAAP. *See id.* at 263 ("Because the issue of waiver has not yet been fully joined, the court cannot rule on that issue at this juncture.").

### A. Defendant, for Several Years, Did Not Protest the Use of a Superseded 1997 SWPA Rate in the Setoff Formula

The parties agree that PSO used a superseded SWPA rate schedule to calculate the setoff in MCAAP's bill from PSO for several years, from 1998 to 2004 or 2005. *See* Pl.'s Facts ¶¶ 4, 6, 8; Def.'s Resp. to Pl.'s Facts ¶¶ 4, 6, 8. Thus, for over five years, defendant failed to object to plaintiff's misinterpretation of the setoff formula. Plaintiff has not alleged that defendant was aware of the use of superseded SWPA rates in the PSO bills submitted to MCAAP during this time.

### B. Defendant Questioned the Billing from PSO Utilizing Superseded SWPA Power Rates

The parties present divergent chronologies of the Army's eventual recognition that in contravention of the setoff formula provided in the contract, PSO was overcharging MCAAP for its energy consumption.[3] The certified claim submitted to the contracting officer by plaintiff references discussions held on September 15, 2005 and September 12, 2006, as well as an allegation that MCAAP began underpaying its PSO bill "beginning February 2006." Compl. Ex. B at 2. The complaint filed in this court tells a slightly different story.

MCAAP is alleged by plaintiff to have begun underpaying its PSO bills "[i]n or around January, 2005." Compl. ¶ 38. Plaintiff also alleges that MCAAP instructed a PSO employee "in the Spring of 2005" to switch from the SWPA 1997 rate to a successor SWPA rate for calculating the setoff against MCAAP's PSO bill. *Id.* ¶ 39. Plaintiff states that the PSO employee began calculating MCAAP's setoff according to the current SWPA rate, but PSO management switched the calculation back to the 1997 SWPA rate by October 1, 2005. *Id.* ¶¶ 40–41. Plaintiff states that MCAAP again fully paid its PSO bill for three months with the setoff calculated according to the superseded SWPA rate, from October 2005 through December 2005, but again began to underpay its bill "[i]n or around January, 2006," and continues to do so. *Id.* ¶¶ 43–44, 47. The al-

---

2. MCAAP's full setoff amount established by the contract depends on other factors as well, but these are not in dispute. *See* Compl. Ex. A at 22.

3. These differing chronologies are immaterial to the court's analysis of the waiver issue.

leged underpayments are derived from MCAAP's reliance on current SWPA rate schedules for Federal Energy for the setoff calculation. *Id.* ¶¶ 38, 48.

Defendant, on the other hand, states that MCAAP became aware that its setoff against the PSO bill and its bill from SWPA for Federal Energy showed "a growing discrepancy," and contacted PSO "as early as January 2004." Def.'s Resp. to Pl.'s Facts ¶ 7. Defendant asserts that MCAAP contacted PSO's billing department and received corrective action. *Id.* Defendant alleges that PSO notified MCAAP in June 2006 that the current SWPA rates would no longer be used "to make the adjustment to the Federal Energy charge." *Id.* Defendant agrees with plaintiff that since 2006 MCAAP has made adjustments to its PSO bill based on a setoff calculation using current SWPA rate schedules for Federal Energy. *Id.; see also* Compl. ¶¶ 44, 47–48, Ex. B at 2.

### C. The Non–Waiver Clause in the Power Agreement Section of the Contract

The Power Agreement section of the contract governs the price paid by PSO to MCAAP for the Federal Energy purchased by MCAAP from SWPA. *See* Compl. Ex. A at 21–22. In addition to the setoff formula and other descriptions of the contractual relationship between MCAAP and PSO, the Power Agreement sets forth miscellaneous contract provisions in Article 13. One of these provisions states that "[e]xcept for any matters which, in accordance with the express provisions of this Agreement, may be resolved by verbal agreement between the Parties, no amendment, modification or change herein shall be enforceable unless reduced to writing and executed by both Parties." *Id.* at 27. More importantly, the Power Agreement also includes a non-waiver clause:

> No waiver by any Party hereto of any one or more defaults by the other Party in the performance of any of the provisions of this Agreement shall be construed as a waiver of any other default or defaults whether of a like kind or different nature. *Id.*

## DISCUSSION

### I. Standard of Review under RCFC 56

"[S]ummary judgment is a salutary method of disposition designed to secure the just, speedy and inexpensive determination of every action." *Sweats Fashions, Inc. v. Pannill Knitting Co.,* 833 F.2d 1560, 1562 (Fed. Cir.1987) (internal quotations and citations omitted). The moving party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." RCFC 56(c)(1). A genuine issue of material fact is one that could change the outcome of the litigation. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A summary judgment "motion may, and should, be granted so long as whatever is before the ... court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

"[A] party seeking summary judgment always bears the initial responsibility of informing the ... court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548 (quoting former version of Fed. R.Civ.P. 56(c)). However, the non-moving party has the burden of producing sufficient evidence that there is a genuine issue of material fact in dispute which would allow a reasonable finder of fact to rule in its favor. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. Such evidence need not be admissible at trial; nevertheless, mere denials, conclusory statements or evidence that is merely colorable or not significantly probative is not sufficient to preclude summary judgment. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548;

*Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505; *see also Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.,* 731 F.2d 831, 835–36 (Fed.Cir.1984) (noting that a party's bare assertion that a fact is in dispute is not sufficient to create a genuine issue of material fact). "The party opposing the motion must point to an evidentiary conflict created on the record at least by a counter statement of a fact or facts set forth in detail in an affidavit by a knowledgeable affiant." *Barmag,* 731 F.2d at 836. Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

## II. Analysis

Defendant, unsurprisingly, relies upon the contract's non-waiver clause as conclusive evidence that MCAAP could not have waived its right to a proper application of the setoff formula in PSO's bills. Plaintiff, on the other hand, argues, without much analysis, that MCAAP impliedly waived its right to enforce the relevant terms of the setoff formula. Pl.'s Opp. at 3–4. Plaintiff also argues that it would be unjust to enforce the non-waiver clause after so many years of MCAAP's acquiescence to the interpretation of the setoff formula presented in PSO's bills. Finally, plaintiff argues that because non-waiver clauses may themselves be waived, the non-waiver clause in this contract became "ineffective" when the contract's non-waiver clause was itself waived by MCAAP. *Id.* at 4.

### A. Did the Army's Actions Constitute an Implied Waiver of Its Right to the Proper Calculation of the Setoff, Regardless of the Contract's Non–Waiver Clause?

 "Waiver consists of a voluntary and intentional relinquishment of a known right."

*Cherokee Nation v. United States,* 174 Ct.Cl. 131, 355 F.2d 945, 950 (1966) (citations omitted). Waiver may be either express or implied. *See, e.g., Am. Airlines, Inc. v. United States,* 77 Fed.Cl. 672, 681 (2007) ("A waiver need not be express, but may be inferred from a pattern of conduct.") (citations omitted), *aff'd,* 551 F.3d 1294 (Fed.Cir.2008). "Waiver is an affirmative defense, as to which the breaching party bears the burden of proof." *Westfed Holdings, Inc. v. United States,* 407 F.3d 1352, 1360 (Fed.Cir.2005) (citing *Seaboard Lumber Co. v. United States,* 308 F.3d 1283, 1299 (Fed.Cir.2002)). Here, plaintiff has not alleged that the Army expressly waived its right to a correct application of the setoff formula. Thus, plaintiff's burden on summary judgment is to demonstrate that an implied waiver occurred or to create a genuine issue of material fact as to whether the Army's actions constituted an implied waiver of its rights to enforce the setoff formula in the Power Agreement.[4]

 In the government contract context, this court has discerned four elements required to establish an implied or constructive waiver of contractual rights:

> [When] the contractor is attempting to prove that it was entitled to deviate from the exact terms of the contract ..., a plaintiff must demonstrate four elements: (1) The [contracting officer] had notice that the work differed from contract requirements. (2) Action or inaction of the [contracting officer] indicated that the non-specification performance was acceptable. (3) The contractor relied on the [contracting officer]'s action or inaction. (4) It would be unfair to permit the Government to retract the waiver.

*Hannon Elec. Co. v. United States,* 31 Fed. Cl. 135, 147 (1994) (internal quotations and citations omitted), *aff'd,* 52 F.3d 343, 1995 WL 140656 (Fed.Cir.1995) (Table). Absence

---

**4.** Although in many instances the resolution of an implied waiver defense may require a thorough inquiry into conflicting evidence of the parties' course of conduct, the absence or existence of an implied waiver of contract rights may be determined on summary judgment. *See, e.g., Gresham & Co. v. United States,* 200 Ct.Cl. 97, 470 F.2d 542, 556 (1972) (granting summary judgment to a plaintiff largely because of an implied waiver of a contract specification by the government); *Solar Turbines, Inc. v. United States,* 23 Cl.Ct. 142, 153 (1991) (holding that "plaintiff's evidence is not sufficient to satisfy its burden in response to defendant's properly supported motion for summary judgment on the waiver issue").

of evidence that the alleged waiver was intentional may also undermine the defense of implied waiver. *See Westfed*, 407 F.3d at 1361 (noting, as additional support for its holding, that "the government cite[d] no other record evidence from which we might otherwise infer that Westfed intended in fact to waive the government's breach"). A court may also examine whether the breaching party has been misled into harmful reliance on the implied waiver of contract rights. *See id.* ("Implied waiver may be inferred by conduct or actions that mislead the breaching party into reasonably believing that the rights to a claim arising from the breach w[ere] waived.") (citing *N. Helex Co. v. United States*, 197 Ct.Cl. 118, 455 F.2d 546, 551 (1972) (*Northern Helex*); *Gresham & Co. v. United States*, 200 Ct.Cl. 97, 470 F.2d 542, 555 (1972)) (noting that a contract "requirement cannot be suddenly revived to the prejudice of a party who has changed his position in reliance on the supposed suspension [of the waived contract term]").

Here, plaintiff has not alleged that from 1998 to 2005 the Army had specific notice that PSO was using superseded SWPA rates in its setoff calculations, or that MCAAP intended to waive its rights under the setoff formula in the Power Agreement. Plaintiff merely states that MCAAP paid its PSO bills, which utilized the superseded 1997 SWPA rate schedule, "without objection or alteration." Pl.'s Facts ¶ 7. Furthermore, plaintiff has not explained how it would be unfair for the Army to now insist that correct SWPA rates be utilized in the calculation of the setoff in its PSO bills, after paying inaccurately calculated bills for years. The court finds that the material facts in the record do not show an implied waiver of MCAAP's rights to a correctly calculated setoff in its PSO bills. Because plaintiff has failed to demonstrate that an implied waiver occurred, and has failed to create a genuine issue of material fact as to an implied waiver of contract rights, defendant's motion for summary judgment must be granted.

**B. Is the Contract's Non–Waiver Clause Enforceable, on this Record, as a Matter of Law?**

 Non-waiver clauses are enforceable in this circuit. *E.g., Long Island Savings Bank, FSB v. United States*, 503 F.3d 1234, 1253 (Fed.Cir.2007); *Westfed*, 407 F.3d at 1361; *Northern Helex*, 455 F.2d at 554. The parties have not cited to binding precedent, and the court has found none, which has held that a party may waive a non-waiver clause. To the extent that such a waiver might be contemplated under *Westfed* and *Long Island Savings*, the court reads those cases as requiring strong evidence of implied waiver to potentially overcome a contract's non-waiver clause. *See Long Island Savings*, 503 F.3d at 1253 (stating that, in light of the relevant non-waiver clause in that dispute, "the plaintiffs' fleeting reference of the government's delay ... does not provide evidence of the government's waiver of its [contract] breach defense"); *Westfed*, 407 F.3d at 1361 (declining to void a non-waiver clause where the record contained "no persuasive reason supplied by the government to justify ignoring the [non-waiver clause] of the parties' contract"). Mere failure to object to a contract breach cannot, without more, waive a non-waiver clause. *See Long Island Savings*, 503 F.3d at 1252–53 ("Because the Assistance Agreement at issue in *Westfed* included a provision providing a non-waiver clause ..., we held that 'a failure to object does not amount to evidence of waiver.'" (quoting *Westfed*, 407 F.3d at 1361)).

Here, plaintiff alleges that MCAAP's delay and failure to object have rendered the contract's non-waiver clause ineffective. The court disagrees. The factual allegations adduced by plaintiff show no implied waiver of the Army's right to enforce the setoff formula's provisions, and fall far short of providing this court with any plausible reason to ignore the express non-waiver clause in the Power Agreement. Thus, on this record, plaintiff's argument that the United States waived its rights to enforce the non-waiver clause in the contract fails as a matter of law.

## CONCLUSION

The setoff formula in the contract mandates that current, effective SWPA rate schedules are to be used in the calculation of the setoff provided to MCAAP against its

payment liability to PSO for the Federal Energy purchased according to those SWPA rate schedules. Defendant's rights under that provision have not been waived. Defendant's motion for summary judgment is granted because there is no genuine issue of material fact as to the Army's waiver of either its rights to a proper application of the setoff formula, or its rights to enforce the non-waiver clause in the contract. Because there are no remaining issues to be decided by this court, plaintiff's claims are dismissed.

Accordingly, it is hereby **ORDERED** that

(1) Defendant's Motion for Summary Judgment, filed September 28, 2009, is **GRANTED;**

(2) The Clerk's office is directed to **ENTER** judgment for defendant and to **DISMISS** the complaint, with prejudice; and

(3) Each party shall bear its own costs.